1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ASTIR F.,

                    Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

CASE NO. C21-1350-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff appeals a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for disability benefits after a hearing before an administrative law judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REVERSED and REMANDED for an award of benefits.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1977.[1] Plaintiff has a bachelor's degree and previously worked as a certified nurse's assistant, data entry clerk, staff analyst, linguistics technician, and engineering specialist. AR 30. Plaintiff filed an application for Disability Insurance Benefits (DIB)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

on August 17, 2015, alleging disability beginning January 30, 2015. AR 16, 158. The application was denied at the initial level and on reconsideration. On November 4, 2020, the ALJ held a telephonic hearing and took testimony from Plaintiff and a vocational expert (VE).[2] AR 88–130. On November 27, 2020, the ALJ issued a decision finding Plaintiff not disabled.[3] AR 15–30. Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on August 24, 2021 (AR 1–6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appeals this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings are supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining

---

[2] The ALJ previously held a hearing in this matter on January 30, 2018, during which the ALJ took testimony from Plaintiff and a VE. AR 37–87.

[3] The ALJ previously issued a decision finding Plaintiff not disabled on August 9, 2018. AR 155–75. On January 31, 2020, the Appeals Council granted Plaintiff's request to review the ALJ's August 2018 opinion and remanded the matter for further administrative proceedings. AR 177–79.

ORDER
PAGE - 2

whether a claimant is disabled. *See* 20 C.F.R. § 404.1520 (2000).

At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 19.

At step two, the ALJ must determine whether a claimant suffers from a severe impairment. The ALJ found Plaintiff has the following severe impairments: degenerative disc disease; migraine headaches; and sleep apnea. AR 19. The ALJ also found that the record contained evidence of hand and wrist pain, irritable bowel syndrome, and allergies; however, the ALJ found that these conditions did not rise to the level of severe. AR 19.

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. AR 20–21.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), with the following limitations:

> the claimant can lift/carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk (with normal breaks) for 2 hours in an eight-hour workday, and sit (with normal breaks) for 6 hours in an eight-hour workday. The claimant can push/pull unlimitedly within those exertional limitations. The claimant can occasionally climb ramps and stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl. The claimant should avoid concentrated exposure to vibrations, fumes, odors, gases, poor ventilation, and even moderate exposure to workplace hazards, such as machinery and unprotected heights.

AR 21. With that assessment, the ALJ found Plaintiff able to perform past relevant work as a data entry clerk, staff analyst, and linguistics technician. AR 29. Because the ALJ found Plaintiff able to perform past relevant work, the ALJ did not reach step five of the sequential analysis.

Plaintiff raises the following issues on appeal: (1) whether the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony; (2) whether the ALJ provided legally sufficient reasons for rejecting three medical source opinions; and (3) whether the ALJ provided germane reasons for rejecting the testimony of Plaintiff's family members. Plaintiff requests remand for an award of benefits. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## 1. Subjective Testimony

The rejection of a claimant's subjective symptom testimony[4] requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence, but not when it merely lacks support in the medical evidence. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[L]ack of medical evidence cannot form the sole basis for discounting pain testimony.").

Plaintiff alleges that she is unable to work because she cannot stand or walk for more than five minutes, cannot sit for more than a half hour at a time, cannot carry more than five pounds,

---

[4] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

1   and cannot reach over her head or bend her knees, which activities cause her to have severe back

2   pain and to suffer for more than a week. AR 374, 408. Plaintiff alleges that she has to be in a

3   reclined position all day long. AR 374, 408. Plaintiff further alleges that her impairments affect

4   her ability to lift, squat, bend, sit, kneel, and climb stairs. AR 379, 411. At the hearing, Plaintiff

5   testified that her medications make her drowsy and dizzy, that she spends about 90 percent of her

6   time in bed, that there are days that she is in bed for weeks, that she cannot get up or sit, that she

7   cannot go downstairs because of dizziness, and that she has fallen a lot. AR 98, 105. Plaintiff

8   further testified that she experiences neck pain and lesions, that the pain would go down to her

9   shoulders and arms, that she experiences migraines every day, and that she has short memory loss.

10  AR 111, 114, 116.

11      Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony by finding it "out

12  of proportion with the objective findings." Dkt. 8, at 6 (citing AR 24). "While subjective pain

13  testimony cannot be rejected on the sole ground that it is not fully corroborated by objective

14  medical evidence, the medical evidence is still a relevant factor in determining the severity of the

15  claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

16  The ALJ found Plaintiff's allegations out of proportion with an April 2015 MRI of Plaintiff's

17  lumbar spine, which revealed, among other things, "only mild facet arthropathy," "no disc

18  herniation, disc herniation, spinal stenosis, foraminal narrowing, nerve impingement, or synovial

19  cyst," and "only mild disc bulge/osteophyte complex . . . ." AR 24. The ALJ further found that

20  MRIs in May 2015 and May 2016 of Plaintiff's thoracic and cervical spine indicated stable results

21  and stable chronic degenerative changes, that the September 2016 nerve conduction studies on

22  Plaintiff's right leg were normal, that April 2015 and September 2015 MRIs of Plaintiff's brain

23  "showed stable results with no new lesions or abnormal enhancement," and that exams showed

ORDER
PAGE - 5

1   that Plaintiff had normal neuro cranial nerves. AR 24. The medical records cited by the ALJ are

2   not reasonably inconsistent with Plaintiff's allegations of pain from her back and migraine

3   impairments. Rather, the April 2015 MRI noted that the findings were "common in people with

4   low back pain." AR 1686. Further, the MRIs, nerve conduction studies, and medical exams cited

5   by the ALJ evaluated Plaintiff regarding right leg pain, right leg weakness, and whether Plaintiff

6   met the criteria for multiple sclerosis. *See* AR 1395–96, 1411, 1414, 1531, 1605. These medical

7   records are not reasonably inconsistent with Plaintiff's allegations of pain from her back and

8   migraine conditions. The Commissioner argues that the ALJ accurately found that medical records

9   show that Plaintiff had normal or mostly normal results in pulmonary and cardiovascular

10  examinations, chest-x-rays, electrocardiography studies, and stress tests. Dkt. 9, at 6. However,

11  these records are similarly not reasonably inconsistent with Plaintiff's allegations of back pain and

12  migraines. Therefore, the ALJ did not provide clear or convincing reasons when discounting

13  Plaintiff's symptom testimony by finding it out of proportion with the medical record.

14          Plaintiff next argues that the ALJ improperly discounted Plaintiff's testimony based on

15  treatment records that noted Plaintiff to be in "no acute distress" during the treatment visits. Dkt. 8,

16  at 7. Citing *Combs v. Berryhill*, 878 F.3d 642 (8th Cir. 2017), Plaintiff argues that the notation "no

17  acute distress" is not significant where an individual has a chronic condition. *Id*. Here, unlike in

18  *Combs*, the ALJ did not rely on his own interpretation of "no acute distress" when assigning weight

19  to competing medical opinions. Rather, the ALJ considered evidence of Plaintiff's lack of acute

20  distress during physical examination findings to find that the medical evidence undermined

21  Plaintiff's symptom testimony. AR 24. Therefore, Plaintiff has not shown that the ALJ erred by

22  considering findings that Plaintiff appeared in no acute distress at medical appointments when

23  evaluating Plaintiff's testimony.

ORDER
PAGE - 6

Plaintiff argues that the ALJ improperly discounted Plaintiff's symptom testimony based on medical records showing normal gait, station, motor strength, muscle bulk, tone, reflexes, and coordination; and the absence of cyanosis, clubbing, and edema. Dkt. 8, at 7. An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle*, 533 F.3d at 1161. The ALJ found that "these relatively benign objective findings do not support the claimant's reports of severe restrictions with lifting, standing, walking, and sitting." AR 24. Although the records cited by the ALJ noted stable or normal musculoskeletal findings, the records also found that Plaintiff had reduced range of motion of the cervical and lumbar spine, neck tenderness and spams, and increased pain with physical activities. *See, e.g.*, AR 647, 651, 655, 1017–18, 1031. It is error for the ALJ to "cherry-pick[]" statements in a medical record; rather, observations "must be 'read in context of the overall diagnostic picture' the provider draws." *Ghanim v. Colvin*, 763 F.3d 1154, 1162, 1164 (9th Cir. 2014) (citation omitted). Because the medical records do not reasonably undermine Plaintiff's allegations of pain symptoms from her back and migraine impairments, the ALJ erred by discounting Plaintiff's testimony regarding her limitations by finding it unsupported by the medical records.

Plaintiff argues that the ALJ improperly found that statements by Plaintiff's treatment providers undermined Plaintiff's testimony. Dkt. 8, at 8. The ALJ found that, in 2015, Dr. Cong Yu, M.D., stated that he could not explain Plaintiff's pain pattern and why the spinal cord stimulator stopped working and that, in 2017, Dr. Yu stated that Plaintiff's neck pain was "likely" due to poor posture and recommended that Plaintiff undergo a TENS unit and physical therapy. AR 25. The ALJ, however, failed to explain how and why Dr. Yu's statements undermined Plaintiff's symptom testimony. To the contrary, Dr. Yu's statements show that Plaintiff has a history of being treated for spine and neck pain. Further, although an ALJ may discount a

claimant's testimony regarding the severity of an impairment where the claimant was prescribed only conservative treatment, *see Para v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007), the record in this case does not support such a finding. Here, Plaintiff underwent several surgeries to implant and fix a spinal cord stimulator to treat her back pain and received Botox injections and an intraarticular facet block injection to treat her migraines and neck pains. AR 646, 651, 655. The Ninth Circuit has found that spinal injections are not properly characterized as "conservative." *See Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014). Further, the Court is not convinced that a recommendation for TENS can reasonably defined as a "conservative" course of treatment. *Cf. Rollins*, 264 F.3d at 856 (finding a recommendation to "avoid strenuous activities" to be a conservative treatment for fibromyalgia). Therefore, the ALJ did not provide clear or convincing reasons for discounting Plaintiff's testimony based on inconsistencies with Dr. Yu's statements.

Plaintiff further argues that the ALJ improperly found that statements from Dr. Suzanne Peterson, M.D., undermined Plaintiff's testimony. Dkt. 8, at 9. In 2017, Dr. Peterson noted that Plaintiff's chronic pain was stable on medication. AR 25; *see* AR 1703. Impairments that can be "controlled effectively" by medication or treatment are not considered disabling for purposes of determining eligibility for Social Security benefits. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, however, Plaintiff testified that she experienced side effects from her medications, including drowsiness, dizziness, and severe itchiness, and that the pain medications no longer work. AR 98, 104–05, 119. Indeed, the ALJ acknowledged that "the amount and dosages of medication prescribed commonly result in a large portion of claimant's problems with dizziness, sedation, and cognitive issues." AR 27. Further, Plaintiff's medical records show that Plaintiff has continued to experience chronic pain despite taking the prescribed pain medications. *See, e.g.*, AR 2984, 3029, 3062; *see also* 20 C.F.R. § 404.1529(c)(3)(iv) (in

evaluating a claimant's symptom testimony, the ALJ will consider "[t]he type, dosage, effectiveness, and side effects of any medication" taken by the claimant to alleviate pain and symptoms). Finally, Dr. Peterson did not treat Plaintiff specifically for pain management; rather, the doctor treated Plaintiff for a follow-up from a maternal-fetal medicine procedure and recommended that Plaintiff continue to work with her pain management team to wean from her pain medication prior to pregnancy. AR 1702–03; *see* 20 C.F.R. § 404.1527 (more weight is given to the medical opinion of a specialist about medical issues related to their area of specialty). Accordingly, the overall record shows neither that Plaintiff's pain was controlled effectively nor that Plaintiff's pain symptoms improved with medication. *See Ghanim*, 763 F.3d at 1164 (observations "must be 'read in context of the overall diagnostic picture' the provider draws" (citation omitted)). Therefore, the ALJ did not provide clear and convincing reasons for discounting Plaintiff's testimony based on Dr. Peterson's statement.

Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony based on a gap in migraine treatment with Dr. Dongmei Liu, M.D., between September 2013 and May 2016, Plaintiff's decision to turn off her nerve stimulator in December 2016 while she was trying to get pregnant, and the nerve stimulator being not turned on again until August 2017. Dkt. 8, at 8–9. The Appeals Council addressed both of these findings in its remand order and found that the ALJ mischaracterized the record. AR 177. Specifically, the Appeals Council found that, although Plaintiff did not receive treatment with Dr. Liu during September 2013 and May 2016, Plaintiff was treated regularly for her migraines during this period by Dr. Yu. AR 177. Further, the Appeals Council found that Plaintiff's spinal cord stimulator was turned off for only eight weeks and reprogrammed in January, February, and May of 2017. AR 177 (citing AR 1064, 1069, 1695–96). The Court may review the ALJ's failure to comply with the Commissioner's own regulations for

legal error applying a clearly erroneous standard. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *Pac. Gas & Elec. Co. v. F.E.R.C.*, 464 F.3d 861, 868 (9th Cir. 2006) ("[I]t is well established that an agency's interpretation of the intended effect of its own orders is controlling unless clearly erroneous." (internal quotation marks and citation omitted)). The ALJ did not resolve these issues on remand as directed by the Appeals Council. Additionally, for the reasons stated by the Appeals Council, the ALJ's reasoning is neither specific, clear, or convincing. Therefore, the ALJ erred by discounting Plaintiff's testimony based on apparent treatment gaps and Plaintiff's decision to turn off her spinal cord stimulator.

Plaintiff next argues that the ALJ improperly discounted Plaintiff's testimony based on Plaintiff's inconsistent statements to treatment providers. Dkt. 8, at 9. An ALJ properly considers prior inconsistent statements in evaluating a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ found that, in October 2016, Plaintiff denied weakness to a treating provider and "reported significant pain reduction with IV infusion and Botox treatments," and that, in October 2015 and November 2015, Plaintiff reported that her headaches were better.[5] AR 25. Plaintiff testified that, even with the Botox injections and IV infusions, her migraines are "still really bad," that she has "migraines every single day," and that the Botox and other medications "takes the severity of the migraine, but it doesn't take migraine away, and it's always there." AR 114–15. Further, the records cited by the ALJ in October 2015 and November 2015 relate to headaches caused by Plaintiff's chronic pansinusitis and not Plaintiff's migraines. AR 708, 711–12. The ALJ has failed to explain how or why these medical records are inconsistent

---

[5] The ALJ also found that Plaintiff reported that her sleep apnea was mild and that she no longer used the CPAP machine, which finding the Commissioner argues supports the ALJ's decision. Dkt. 9, at 8. Because Plaintiff does not specifically identify error in the ALJ's evaluation of evidence relating to Plaintiff's sleep apnea, the Court does not address this argument. *See Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (the court "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief").

with Plaintiff's allegations. Therefore, the ALJ reasoning for discounting Plaintiff's testimony based on inconsistent statements to treating providers is not specific, clear, or convincing.

Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony by finding it inconsistent with Plaintiff's daily activities. Dkt. 8, at 9–10. An ALJ may discount a Plaintiff's symptom testimony where the "claimant is able to spend a substantial part of his day engaged in pursuits involving the performing of physical functions that *are* transferrable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (emphasis in original); *see also Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work). The ALJ found that "aside from straightening or curling her hair, [Plaintiff] does not have any significant difficulty with her personal care, which includes dressing, hair care, feeding herself, and using the bathroom." AR 25. The ALJ also found that Plaintiff is able to prepare simple meals independently, drive a car when needed, manage her own money, shop online, sing, read, socialize on the phone and in person, and go to church, doctor's appointments, and the disability office. AR 25. The ALJ's finding that Plaintiff does not have significant difficulty caring for herself is not supported by substantial evidence. Plaintiff reported on her function reports that she cannot stand or lift her arms while performing personal care and that it is hard for her to clean herself after using the toilet. AR 375. Plaintiff similarly reported difficulty standing when preparing frozen meals and that she only drives when it is urgent to go to a doctor's appointment. AR 376–77. Further, although Plaintiff reported that she is able to manage her money, sing, read, and engage in limited socialization, the ALJ failed to explain how these activities undermine Plaintiff's allegations that she experiences disabling back and migraine pain, particularly where these activities do not clearly require the performance of physical functions in

1   the workplace. *See Fair*, 885 F.3d at 603 ("The Social Security Act does not require that claimants

2   be utterly incapacitated to be eligible for benefits . . . ."). Therefore, the ALJ did not provide

3   specific, clear, or convincing reasons for discounting Plaintiff's testimony based on inconsistency

4   with Plaintiff's daily activities.

5          Plaintiff next argues that the ALJ improperly found that Plaintiff performed work activities

6   during the period at issue, specifically that Plaintiff cared for her disabled father between January

7   2015 and September 2015. Dkt. 8, at 11 (citing AR 25–26). Although Plaintiff reported that her

8   husband helped care for her father, the ALJ found that Plaintiff cared for her father during the day

9   while her husband worked, "which can be quite physically demanding, without any particular

10  assistance." AR 26. Here, however, Plaintiff testified that her brother was helping her care for her

11  father because she could not do all the work, that her care activities consisted of reminding her

12  father to take his medications, and that they eventually transferred the caregiving to her brother.

13  AR 47. Plaintiff's testimony shows neither that she provided physical care for her father nor that

14  she cared for him without assistance. Therefore, the ALJ did not provide specific, clear, or

15  convincing reasons for discounting Plaintiff's testimony by finding it inconsistent with her ability

16  to care for her disabled father.

17         Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony by finding it

18  inconsistent with Plaintiff's ability to travel out of state. Dkt. 8, at 11. The ALJ found that Plaintiff

19  testified to being able to travel by plane to visit family in 2016 and 2017 and that these activities

20  were "inconsistent with the claimant's claims that pain prevents her from standing or sitting for

21  only a few minutes." AR 26. Here, there is no evidence that Plaintiff remained seated for the

22  duration of the flights or that Plaintiff did not stand up or recline at intervals to sufficiently

23  undermine Plaintiff's testimony regarding her sitting and standing limitations. *See Tackett v. Apfel*,

1   180 F.3d 1094, 1103 (9th Cir. 1999) (ability to travel by car long distance not inconsistent with

2   physician's assessment of sitting limitations when there was no evidence of the frequency or

3   duration of rest stops, or whether claimant rode sitting up, reclining, or lying down); *see also*

4   *Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986) (declining to find claimant's "claim of

5   disability gainsaid by his capacity to engage in periodic restricted travel"). Further, Plaintiff

6   testified that she used a wheelchair while in the airport. AR 73. Therefore, the ALJ did not provide

7   specific, clear, or convincing reasons for discounting Plaintiff's testimony based on Plaintiff's

8   traveling to visit family in 2016 and 2017.

9        Finally, Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony by

10  finding it undermined by Plaintiff's use of opiates and inconsistent with Plaintiff's attempts to start

11  a family. Dkt. 8, at 11–13. The ALJ found that the amount and type of medications prescribed to

12  Plaintiff, which included Oxycodone, "perplexing" given Plaintiff's documented allergy to

13  Oxycodone and that Plaintiff's plans to become pregnant were inconsistent with "reports of

14  disabling pain that require high doses of narcotics." AR 26–27. "[T]o reject the specific portions

15  of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ

16  provide clear and convincing reasons relevant to that portion. *Smith v. Kijakazi*, 14 F.4th 1108,

17  1113 (9th Cir. 2021) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he

18  ALJ must specifically identify the testimony she or he finds not to be credible and must explain

19  what evidence undermines the testimony.")). Here, the ALJ failed to identify specific portions of

20  Plaintiff's testimony that were inconsistent with Plaintiff's prescribed course of pain medication

21  or that was inconsistent with Plaintiff's prior attempts to start a family. Therefore, the ALJ did not

22  provide specific, clear, or convincing reasons for discounting Plaintiff's testimony based on

23  inconsistent with Plaintiff's prescribed medications.

ORDER
PAGE - 13

1

**2.  Medical Opinions**

2

The regulations applicable to Plaintiff's case require the ALJ to weigh medical opinions

3

regardless of the source.[6] 20 C.F.R. § 404.1527(c). Under these regulations, the ALJ is required to

4

give "controlling weight" to a treating physician's opinion if it is "well-supported by medically

5

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

6

substantial evidence in [claimant's] case record." *Id*. § 404.1527(c)(2). More weight should be

7

given to the opinion of a treating doctor than to a non-treating doctor, and more weight should be

8

given to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81

9

F.3d 821, 830 (9th Cir. 1995). Where not contradicted by another doctor, a treating or examining

10

doctor's opinion may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923

11

F.2d 1391, 1396 (9th Cir. 1991). Where contradicted, a treating or examining doctor's opinion

12

may not be rejected without "'specific and legitimate reasons' supported by substantial evidence

13

in the record for so doing." *Lester*, 81 F.3d at 830–31 (quoting *Murray v. Heckler*, 722 F.2d 499,

14

502 (9th Cir. 1983)).

15

With these regulations and considerations in mind, the Court proceeds to its analysis of the

16

medical evidence in this case.

17

A.  Dr. Cong Yu, M.D.

18

Dr. Yu, Plaintiff's treating physician, provided an assessment of Plaintiff's physical

19

functioning dated January 26, 2018. AR 2594–97. Dr. Yu diagnosed Plaintiff with low back and

20

leg pain caused by disc degenerative disorder and opined that Plaintiff could stand/walk for 30

21

22

23

---

[6] In 2017, the Social Security Administration amended its regulations and removed the "controlling weight" requirement for all applications filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c (2017). Because Plaintiff's claim was filed before March 27, 2017, the new rules are not applicable to Plaintiff's case.

ORDER
PAGE - 14

1   minutes at one time up to two hours and sit for 30 minutes at one time up to four hours during an

2   eight-hour workday, noting that Plaintiff's pain increases as she stands longer. AR 2594–95.

3   Dr. Yu further opined that, during an eight-hour workday, Plaintiff would need to alternate

4   between sitting, standing, and/or walking every 30 minutes, could frequently lift and carry between

5   six and 10 pounds, could frequently perform repetitive tasks with her upper extremities, would not

6   be able to maintain an average work pace, would require more than 15-minute work breaks every

7   30 minutes, and would be off task more than 15 percent of the day. AR 2595–97.

8         In deciding the weight to give to any medical opinion, the ALJ considers factors such as

9   the examining relationship, the treatment relationship, supportability, consistency, specialization,

10  and other factors which tend to support or contradict the opinion, including the source's

11  understanding of the agency's disability program and evidentiary requirements, and the source's

12  familiarity with the case record. 20 C.F.R. § 404.1527(c). The ALJ gave significant weight to

13  Dr. Yu's opinion that Plaintiff can stand/walk for two hours and lift/carry 10 pounds frequently.

14  AR 28. However, the ALJ gave little weight to Dr. Yu's assessment that Plaintiff is limited in her

15  ability to sit, be on task, and maintain an average work pace and that Plaintiff would require a

16  sit/stand option and extra work breaks. AR 28. The ALJ found that Dr. Yu did not explain why he

17  assessed Plaintiff with these limitations and that the doctor's opinion was inconsistent with the

18  record as a whole. AR 28.

19        Plaintiff argues that the ALJ improperly discounted Dr. Yu's assessed limitations by

20  finding that the doctor did not explain why the limitations were necessary. Dkt. 8, at 14. Plaintiff

21  argues that Dr. Yu attributed the limitations to pain and the limitations were consistent with the

22  doctor's treatment notes. *Id.* An ALJ "may take into account the quality of the explanation when

23  determining how much weight to give a medical opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th

Cir. 2020). The ALJ found that Dr. Yu did not explain why Plaintiff required a sit/stand option or extra work breaks, would be off task more than 15 percent, and why Plaintiff would not be able to maintain an average work pace. AR 28. Contrary to the ALJ's finding, Dr. Yu explained that he assessed that Plaintiff could not stand, walk, or sit for longer than 30 minutes at one time because Plaintiff's pain increased when she performs these activities for long. AR 2594–95. Further, in assessing that Plaintiff would need to alternate between sitting and standing every 30 minutes, would need extra work breaks every 30 minutes, and would be off task more than 15 percent of an eight-hour workday, the questionnaire completed by Dr. Yu identified that these limitations were based on "impairments/pain or the side-effects of medication." AR 2595–97. Further, it is reasonably clear from Dr. Yu's opinion that his opinion concerning sit/stand options, extra breaks, pace, and being off task are derived from the doctor's assessment that Plaintiff could not stand, walk, or sit for longer than 30 minutes. *See* AR 2594–95. Therefore, the ALJ's reason for discounting Dr. Yu's opinion based on lack of explanation is not supported by substantial evidence.

Plaintiff argues that the ALJ improperly substituted his own interpretation of the medical record in place of Dr. Yu's interpretation. Dkt. 8, at 14. "The ALJ must set out in the record his reasoning and evidentiary support for his interpretation of the medical evidence." *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999). The ALJ found that "there is no logical bridge drawn from the limitations opined [by Dr. Yu] back to the cause of the limitations, other than to cite subjective complaint of 'pain.'" AR 28. Here, the record contains several of Dr. Yu's treatment records, in which the doctor treated Plaintiff for chronic low back pain, migraine headache, and other ailments. *See* AR 642–98. These treatment records are consistent with Dr. Yu's opinion, yet the ALJ's decision does not discuss Dr. Yu's treatment records or explain how and why the ALJ

afforded little weight to Dr. Yu's opinion despite this evidence. Rather, the ALJ appears to have given substantial weight to the opinion of agency consultant Dr. Norman Staley, M.D., who assessed Plaintiff with limitations consistent with sedentary work. AR 27–28, 150–52. Notably, Dr. Staley's opinion provided no supporting explanation for his assessment of Plaintiff's physical limitations. AR 150–52. Opinions supported by explanation and treatment records cannot be outweighed by opinion of a non-examining physician "who merely checked boxes without giving supporting explanations." *Holohan*, 246 F.3d at 1205. Therefore, the ALJ erred by failing to give proper weight to the opinion of Plaintiff's treating provider.

The Commissioner argues that the ALJ properly rejected Dr. Yu's opinion by finding it inconsistent with the record. Dkt. 9, at 14. An ALJ may reject a physician's opinion that is inconsistent with the medical record. *See Tommasetti*, 533 F.3d at 1041. The ALJ found Dr. Yu's assessed limitations inconsistent with the objective findings, including Plaintiff's treatment history, her performances at appointments and examination, and her daily and traveling activities. AR 28. In support of this finding, the ALJ cites to substantially the same medical records cited in the ALJ's evaluation of Plaintiff's symptom testimony. *Compare* AR 24–25 *with* AR 28. Dr. Yu stated that he based his diagnoses of low back and leg pain on Plaintiff's disc degenerative disorder and assessed Plaintiff's functional limitations due to these impairments. AR 2594. As discussed above, the medical records cited by the ALJ evaluated Plaintiff in relation to other impairments, including right leg pain, right leg weakness, chronic pansinusitis, chest pain, brain abnormalities, and whether Plaintiff met the criteria for multiple sclerosis. AR 28 (citing AR 1414, 1531, 1602–04, 1610, 1683, 1686–89, 1808, 1811, 1899, 1926, 1938). Further, Plaintiff's MRIs showed stable chronic degenerative changes, the April 2015 MRI specifically noted that the findings were "common in people with low back pain," and, although the records cited by the ALJ noted stable

1  or normal musculoskeletal findings, the records also found that Plaintiff had reduced range of

2  motion of the cervical and lumbar spine, neck tenderness and spams, and increased pain with

3  physical activity. *See, e.g.*, AR 1414, 1686. AR 647, 651, 655, 1017–18, 1031. Finally, as

4  discussed above, the evidence cited regarding Plaintiff's daily and travel activities does not

5  reasonably show that Plaintiff maintains a greater level of physical functioning. Accordingly, these

6  medical records are not reasonably inconsistent with Dr. Yu's opinion that Plaintiff's disc

7  degenerative disorder causes Plaintiff's back and leg pain and results in functional limitations.

8        B.  Dr. Stuart Rubin, M.D., and Dr. Kevin Sperber, M.D.

9        On February 27, 2015, Dr. Rubin reviewed Plaintiff's medical records and opined that,

10  between February 27, 2014, and February 27, 2015, Plaintiff had the following limitations: sit for

11  30 minutes at a time for up to three hours per day; stand/walk for 30 minutes at a time up to one

12  hour per day; lift/carry/push/pull up to 10 pounds; never reach above shoulder level or below desk

13  level; frequently reach at desk level; and unrestricted use of hands. AR 2051. On August 21, 2015,

14  Dr. Rubin reviewed a medical record from July 27, 2015, and noted that there was not enough

15  information to comment on Plaintiff's functionality from August 2015 through October 2015.

16  AR 2021–22.

17        On January 11, 2016, Dr. Sperber reviewed Plaintiff's medical records and opined that

18  Plaintiff's "limitations are based solely on her perceived pain and her tolerance for any noxious

19  sensations associated with activity . . . [which] could conceivably significantly increase pain albeit

20  transiently." AR 2253. Dr. Sperber assessed the following functional limitations for the period

21  from January 30, 2015, and beyond: lift no more than five pounds up to three times per hour; squat

22  up to four times per hour; stand/walk with a five-minute break at least every 20 minutes; sit with

23  a five-minute break every 30 minutes; no extremes of extension, flexion, or twisting; no climbing

ladders; and drive only two hours per day. AR 2254.

The ALJ gave little weight to Drs. Rubin and Sperber's assessment of Plaintiff's functional limitations. AR 29. The ALJ found that the doctors' opinions were remote in that they were completed in 2015 and 2016, vary in degree in work limitations, do not represent Plaintiff's current physical condition, and that neither doctor had contact with Plaintiff after this period. AR 29.

Plaintiff argues that the ALJ improperly rejected Drs. Rubin and Sperber's opinions based on the opinions being completed in 2015 and 2016. Dkt. 8, at 16. An ALJ may reject a medical opinion where that opinion is outside the relevant period. *See Carmickle*, 533 F.3d at 1165. Here, however, the opinions provided by Drs. Rubin and Sperber were not outside the relevant period; rather, the opinions specifically identified functional limitations covering a period that includes January 30, 2015, the alleged onset date. Further, the ALJ did not identify any more recent opinions that he relied on in place of Drs. Rubin and Sperber's opinions. *See Johnson v. Astrue,* 303 F. App'x 543, 545 (9th Cir. 2008) (affirming ALJ's rejection of medical opinions that were remote in time and the ALJ's reliance on more recent opinions). Rather, the ALJ appears to have relied on the May 2016 opinion of Dr. Staley, which was produced around the same time as Dr. Rubin and Sperber's opinions. AR 27–28. Therefore, the ALJ's reason for rejecting Drs. Rubin and Staley's opinions based on the opinions being remote was not clear or convincing.

Plaintiff next argues that the ALJ improperly rejected Drs. Rubin and Sperber's opinion by finding that the opinions varied in degree of work limitations to none to less than sedentary. Dkt. 8, at 16. Although Drs. Rubin and Sperber did not assess entirely identical functional limitations, both doctors assessed limitations that are less than or consistent with sedentary work. *See* 20 C.F.R. § 404.1567(a) (defining sedentary work). Contrary to the ALJ's finding, neither doctor assessed

no limitations.[7] Accordingly, the ALJ did not provide clear or convincing reasons for discounting Drs. Rubin and Sperber's opinions by finding that the opinions varied in degree of work limitations.

### 3. Lay Testimony

Plaintiff contends that the ALJ failed to properly evaluate the function reports completed by Plaintiff's family members. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may discount lay witness testimony on grounds that it conflicts with the medical evidence. *Id.*

Plaintiff argues that the ALJ failed to provide specific and germane reasons for rejecting the lay testimony. Dkt. 8, at 17. The ALJ found that Plaintiff's family members' statements were similar to Plaintiff's own subjective complaints and rejected the lay statements for the same reasons that the ALJ rejected Plaintiff's own subjective testimony. AR 29. An ALJ may reject lay witness testimony "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117. Here, as discussed above, the ALJ failed to provide well-supported reasons for rejecting Plaintiff's symptoms testimony. Therefore, the ALJ failed to provide germane reasons for rejecting the lay witness testimony.

---

[7] Dr. Rubin's August 2015 did not contain an assessment of Plaintiff's functional limitations for the period August 1, 2015, to October 30, 2015, noting that "there is not enough information based on a paucity of physical examination abnormalities or a functional assessment to comment upon regarding her functionality." AR 2022. Dr. Rubin's inability to assess Plaintiff's functionality in August 2015, however, cannot reasonably be interpreted as a finding of no limitations.

ORDER
PAGE - 20

### 4. Remedy

The Court has discretion to remand for further proceedings or for an award of benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, a remand for an immediate award of benefits is an "extreme remedy" appropriate "only in 'rare circumstances.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)); *accord Leon v. Berryhill*, 880 F.3d 1044, 1045 (9th Cir. 2017) ("An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule.").

Before remanding a case for an award of benefits, three requirements must be met. First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison*, 759 F.3d 995 at 1020). Second, the Court must conclude "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" *Id*. In doing so, the Court considers the existence of "'outstanding issues'" that must be resolved before a disability determination can be made. *Id*. (quoting *Treichler*, 775 F.3d at 1105). Third, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Id*. (quoting *Garrison*, 759 F.3d at 1021).

In this case, the first and second requirements have been met. As described above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony, the opinion of Plaintiff's treating physician Dr. Yu, the opinions of examining physicians Drs. Rubin and Sperber, and the lay testimony of Plaintiff's family members. Additionally, the Commissioner held two administrative hearings in this matter, during which the ALJ took testimony from Plaintiff and vocational experts. Further, the record contains opinion evidence from Plaintiff's treating and non-

examining providers, medical records, and laboratory reports spanning from late-2014 to late-2020 and covering the relevant period. Therefore, the Court finds that this matter has been fully developed and further administrative proceedings would serve no useful purpose.

Under the third requirement, the Court considers whether it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Dr. Yu is Plaintiff's treating provider and, as discussed above, Dr. Yu's opinion is well-supported by the medical findings and not reasonably inconsistent with other substantial evidence in the record. Therefore, Dr. Yu's opinion is properly accorded controlling weight. *See* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Dr. Yu assessed that Plaintiff could stand/walk for up to two hours per day, could sit for up to four hours per day in 30-minute intervals, and would be off task more than 15 percent of the day. AR 2594–97. At the 2020 hearing, the VE testified that an individual with these standing, walking, and sitting limitations would be unable to sustain full-time work and that an individual who is off task more than 10 percent of the day would be at risk of termination. AR 125, 127. Based on the VE's testimony, Plaintiff would be precluded from maintaining gainful employment when properly crediting the limitations assessed by Dr. Yu. Therefore, the Court finds that the third requirement has been met, and this matter should be reversed and remanded for an award of benefits.

//

//

ORDER
PAGE - 22

1

## <u>CONCLUSION</u>

2     For the reasons set forth above, this matter is REVERSED and REMANDED for an award

3  of benefits.

4     DATED this 17th day of June, 2022.

5

6

7  MARY ALICE THEILER
   United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER
PAGE - 23